# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3193 | **DATE** | 7/18/2002 |
| **CASE TITLE** | American Massage Therapy Association Vs. Maxwell Petersen Associates, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment [22-1] is granted as to Counts III and VI of Plaintiff's complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | JUL 19 2002 | 42 |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | /S | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | U.S. DISTRICT COURT CLERK | 7/18/2002 | |
| DK | courtroom deputy's initials | | 02 JUL 18 PM 6:15 | date mailed notice DK | |
| | | | Date/Time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| AMERICAN MASSAGE THERAPY ASSOCIATION, a Delaware not-for-profit corporation, ) ) ) ) | |
| Plaintiff, ) | No. 01 C 3193 |
| v. ) | Magistrate Judge Morton Denlow |
| MAXWELL PETERSEN ASSOCIATES, INC., a California corporation, ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff American Massage Therapy Association ("Plaintiff" or "AMTA") filed a six-count complaint against Maxwell Peterson Associates, Inc., ("Defendant" or "MPA") arising out of Defendant's copying of thousands of names from Plaintiff's membership directory. The complaint alleged violations of the Copyright Act, violations of the Lanham Act, common law misappropriation, common law unfair competition, and civil conspiracy. Four counts were dismissed on Defendant's motion to dismiss. The parties filed cross-motions for summary judgment on the remaining two counts: copyright violation and civil conspiracy. This case raises the issue of whether copying 17,617 names and addresses from a directory amounts to copyright infringement. For the following reasons, this Court holds the copying does not amount to copyright infringement and grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

# I. BACKGROUND FACTS

## A. The Parties

Plaintiff, an association of professional massage therapists, is a not-for-profit corporation with its principal place of business in Evanston, Illinois. (Pl. Res. ¶ 2[1]; Def. Res. ¶ 1[2]). Defendant is a California corporation, marketing and public relations publishing firm that owns the fictitious business names "Massage Today" and "MPAmedia" and publishes the magazine *Massage Today*. (Pl. Res. ¶ 1; Def. Res. ¶ 2).

## B. Motion to Dismiss

Plaintiff filed a six-count complaint against Defendant alleging violations of the Lanham Act, copyright infringement, common law misappropriation, common law unfair competition, and civil conspiracy. Defendant moved to dismiss all counts. Judge George W. Lindberg, of this court, dismissed Counts I and II (Lanham Act claims), Count IV (common law misappropriation), and Count V (common law unfair competition). Judge Lindberg allowed Count III (copyright infringement) and Count VI (common law conspiracy) to stand. (Minute Order 8/29/01).

## C. The 1999 AMTA *Registry*

Plaintiff created the 1999 AMTA *Registry* ("the 1999 Registry"). (Def. Res. ¶ 4).

---

[1] Pl. Res. refers to Plaintiff's Rule 56.1(b) Response to Defendant's Statement of Uncontested Material Facts.

[2] Def. Res. refers to Defendant's Response to Plaintiff's Statement of Uncontested Material Facts.

The 1999 Registry contains a roster of officers and staff, corporate bylaws, and the names and addresses of 36,399 members, listed geographically ("Geographical") and by category of membership ("Alphabetical"). (*Id.*). AMTA membership criteria are defined by the AMTA Bylaws. (*Id.*). The 1999 Registry also contains a cover with two pairs of hands touching, a table of contents, a list of the AMTA Board of Directors, a mission statement, a list of goals, a code of ethics, and a list of AMTA staff. (Pl. Res. ¶ 12). Over 35,000 copies of the 1999 Registry were distributed. (Pl. Res. ¶ 13).

The listings in the Geographical portion of the 1999 Registry include the member name, address, telephone number, membership category, and type of therapist (registered and/or sports massage therapist). (Pl. St. Add. Facts, Ex. C at 27). The membership categories consist of: professional, associate, school, auxiliary, and honorary; and are also broken down further into active, inactive, or retired. (*Id.* at 29). Plaintiff arranged the membership listing geographically, first by United States of America, then military location, followed by international countries. (*Id.* at 27). The city, military base, or island is then listed. (*Id.* at 27-374). Then the therapists are listed alphabetically in each city, military base, or island. (*Id.*).

The listings in the Alphabetical portion of the 1999 Registry includes the member name, type of therapist (registered and/or sports massage therapist), and the reference page for contact information in the Geographical section. (Pl. St. Add. Facts, Ex. C at 375). Plaintiff ordered the members first by membership category (Professional, Associate, School,

Allied, Auxiliary, and Honorary) and then alphabetized within each category. (*Id.* at 375-477).

The 1999 Registry contained the above mentioned eight categories of membership, which were defined and described in the Association bylaws. (Def. Res. ¶ 8). In 1998, when the 1999 Registry was being prepared, AMTA's policy and practice included revoking the membership of any member who failed to meet the appropriate criteria for membership pursuant to Article III, Section 7 of the bylaws and only members in good standing were listed. (Def. Res. ¶ 9).

AMTA offered members the option of being listed, or not, in the 1999 Registry, as well as the option of being listed on any mailing list of members of AMTA leased to third parties as a mailing list. (Def. Res. ¶10). Approximately 4,000 members, who wanted their names and addresses listed in the 1999 Registry, indicated they did not want their names leased to third parties. (*Id.*).

The 1999 Registry contained the following restrictions in use:

> This *Registry* contains confidential information and is intended for the exclusive use of members of the American Massage Therapy Association. It is maintained as a trade secret, is a membership benefit of the Association, and is specifically designed for membership networking, improved communication, and professional referrals. Possession of, access to, or use by any other means of this *Registry* does not imply permission to utilize it as a mailing list or for any purpose not stated in the preceding sentence, and is strictly prohibited.

(Def. Res. ¶ 24; Pl. St. Add. Facts, Ex. C at 1)[3] and

> *The information contained in this publication is the property of the American Massage Therapy Association, is highly confidential, and may not be duplicated or used except for the personal use of the authorized recipient of the* Registry. *The contents of this* Registry *may not be used as a mailing list and may not be reproduced or stored electronically or copied in any manner whatsoever without advance written permission of AMTA.*

(Pl. St. Add. Facts, Ex. C at 27).

**D.     Copyright**

AMTA registered its copyright in the 1999 Registry with the United States Copyright Office, and was assigned Registration No. Tx-05436436. (Def. Res. ¶ 5).

**E.     Defendant Obtains A Copy of the 1999 Registry**

Defendant obtained a copy of the 1999 Registry from Diane Routh, a friend of its employee, JoAnn MacKilligan, who was given the task of compiling a mailing list of massage therapists, by Defendant's sole owner, Donald M. Petersen, Jr. (Def. Res. ¶ 12). Routh was an ex-employee of Defendant. (Def. Res. ¶ 13). The copy of the 1999 Registry received by MacKilligan contained pages listing AMTA member names and addresses in 50 states and the District of Columbia, and, except for five states, each of these pages for each state (303 out of a total of 345) had the word "Done" written on it. (Def. Res. ¶ 14). MacKilligan testified the markings of the word "Done" were not on the 1999 Registry when she obtained it. (Def. Res. ¶ 15). Rather, the marking of "Done" on the 1999 Registry was

---

[3] Pl. St. Add. Facts refers to Plaintiff's Rule 56.1(b) Statement of Additional Facts in Opposition to Defendant's Statement of Uncontested Material Facts.

completed by an employee of Defendant. (Def. Res. ¶ 16). The contents of the 1999 Registry were "valuable" according to MacKilligan. (Def. Res. ¶ 17).

**F.     Defendant Copies Portions of the 1999 Registry**

To compile the mailing list of massages therapists, Defendant obtained massage therapist names from regulatory agencies in states which regulated them, however that was only about half of all states. (Def. Res. ¶ 18). Therefore, Defendant copied 17,617 names and addresses from the 1999 Registry. (Pl. Res. ¶ 14). Defendant's president admitted taking the names from the 1999 Registry because "We did not have them." (Def. Res. ¶ 20; Pl. Stat. Uncon. Facts, Ex. E at 33[4]). Furthermore, during oral argument in this case, both parties agreed the only portion of the 1999 Registry copied by Defendant were names and addresses.

**G.     Defendant Uses the Names and Addresses from the 1999 Registry**

Defendant added the names and addresses from the 1999 Registry to its existing database. (Pl. Res. ¶ 15). Defendant's database included the names and addresses Defendant copied from the 1999 Registry as well as approximately 73,000 names and addresses of other massage therapists. (Pl. Res. ¶ 16; Def. Stat. Uncon. Facts, Ex. G at 31-32[5]). Defendant used the names and addresses on its database as a mailing list for its magazine, *Massage Today*.

---

[4] Pl. Stat. Uncon. Facts refers to Plaintiff's Statement of Uncontested Material Facts.

[5] Def. State Uncon. Facts refers to Defendant's Statement of Uncontested Material Facts in Support of Motion for Summary Judgment.

(Pl. R. 56.1(b) St., Ex. A at 15, 19, 45[6]).

Marlys Sperger, AMTA's former executive director, testified, to her knowledge, Defendant only utilized the membership list and she has not seen a registry produced by Defendant. (Def. Stat. Uncon. Facts, Ex. E at 17-19). Sperger also stated certain names in the 1999 Registry were not "original" to AMTA. (Def. Stat. Uncon. Facts, Ex. E at 17; Pl. Res. ¶ 17).

Defendant also sold or rented the names on its database. (Pl. R. 56.1(b) St., Ex. A at 18-20, 45-53). The greater the number of names on Defendant's mailing list, the greater amount of revenue Defendant could generate for rental of those mailing lists. (Def. Res. ¶ 22). Defendant also provided the 17,617 names to an advertiser on a one-time basis in exchange for advertising. (Def. Res. ¶ 23; Def. Res., Ex. B at 45-46).

**H.     Mailing List Charges**

Defendant operates a massage therapist locator service which attempts to impose a $5.00 per name fee for anyone who makes commercial use of the names obtained through the service. (Def. Res. ¶ 28). Plaintiff rented its names at a rate of $0.16 per name for each thousand names during the relevant time period. (Def. Res. ¶ 29; Def. Res., Ex. E). Defendant collected $963.03 from the rental of AMTA names and addresses it took from the 1999 Registry and gave names worth $704.68 in rental value to a customer as an incentive to do business with Defendant. (Def. Res. ¶ 30).

---

[6] Pl. R. 56.1(b) St. refers to Plaintiff's Rule 56.1(b) Statement of Additional Facts In Opposition to Defendant's Statement of Uncontested Material Facts.

## II. SUMMARY JUDGMENT STANDARD

Plaintiff and Defendant filed cross-motions for summary judgement on the issues of copyright infringement and common law conspiracy. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Sinkler v. Midwest Prop Mgmt. Ltd. P'ship*, 209 F.3d 678, 682-83 (7th Cir. 2000). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Sinkler*, 209 F.3d at 683; *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998).

The movant bears the burden of establishing no genuine issue of material fact exists. *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56 (c); *Celotex*, 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A fragment of evidence in support of the non-movant's position is insufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury

could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). This burden must be met by appropriate citations to relevant evidence and cannot be met with conclusory statements or speculation. *Brasic v. Heinemann's Inc., Bakeries*, 121 F.3d 281, 286 (7th Cir. 1997). Weighing evidence, deciding credibility, and inferring reasonable deductions are responsibilities for a jury and not for a judge to decide in making a summary judgment determination. *Anderson*, 477 U.S. at 255.

In filing cross-motions for summary judgment, the parties are not waiving a trial on the merits, each party is merely asking the court to grant it judgment without a trial, unless the judge disagrees. *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996). Each movant must individually fulfill the requirements necessary to obtain summary judgment under Rule 56. *United Transportation Union v. Illinois Central R.R.*, 998 F. Supp. 874, 880 (N.D. Ill. 1998). The court is not required to grant summary judgment as a matter of law for either side when faced with cross-motions for summary judgment. *Vartanian v. Metropolitan Life Insurance Co.*, 2002 WL 484852 *4 (N.D.Ill. 2002). Rather, the court is to evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant. *Brownlee v. City of Chicago*, 983 F.Supp. 776, 779 (N.D. Ill. 1997).

### III. ISSUES TO BE DECIDED

The cross-motions for summary judgment raise the question of whether material issues of fact exist regarding the following issues: 1) whether Defendant infringed Plaintiff's

copyright and 2) whether Defendant civilly conspired against Plaintiff. Oral argument was held on July 11, 2002.

A.  **Copyright Infringement**

The issue before this Court is to determine whether the copyright in Plaintiff's 1999 Registry protects the names and addresses copied by Defendant. To establish copyright infringement, Plaintiff must prove two elements: 1) ownership of a valid copyright, and 2) copying of constituent elements of the work that are original. *Feist Publ'n, Inc. v. Rural Tel. Service Co., Inc.*, 499 U.S. 340, 361 (1991). The first element is not at issue here; Defendant concedes the 1999 Registry, considered as a whole, is a valid copyright. Therefore, the question is whether Plaintiff proved the second element. Namely, did Defendant, by copying 17,617 names and addresses from the 1999 Registry copy anything that was "original" to Plaintiff?

*Feist* is the leading case in this area and offers much insight into the issue before this Court. In *Feist*, the plaintiff was a telephone company required by a state regulation to annually issue an updated telephone directory. *Id.* at 342. The plaintiff published a typical telephone directory consisting of white pages, which listed in alphabetical order the names, towns and telephone numbers of plaintiff's subscribers, and yellow pages which listed business subscribers alphabetically by category and featured advertisements. *Id.* Plaintiff obtained the data for its directory when its subscribers provided their names and addresses when applying for phone service. *Id.* at 343. The defendant was a publishing company

10

specialized in area-wide telephone directories. *Id.* at 342. After plaintiff refused to license its white pages listings to defendant, defendant used them without plaintiff's consent. *Id.* at 343. Plaintiff then sued for copyright infringement. *Id.* at 344.

The *Feist* Court found the raw data (names, towns, and telephone numbers) did not satisfy the originality requirement because while plaintiff may have been the first to discover and report the raw data, this data did not "ow[e] its origin" to plaintiff. *Id.* at 361. The Feist Court held the data was uncopyrightable facts and as such, the originality requirement "rules out protecting ... names, addresses, and telephone numbers of which the plaintiff by no stretch of the imagination could be called the author." *Id.* Relying on *Feist*, the Seventh Circuit found identification of recipe ingredients necessary to prepare a dish a statement of facts in *Publications International, Limited v. Meredith Corp.*, 88 F.3d 473, 480 (7th Cir. 1996). The court did not view the functional listing of ingredients as original within the meaning of the Copyright Act. *Id.*

By comparison, the copying by Defendant of the names and addresses in the 1999 Registry does not amount to copyright infringement. Plaintiff's former executive director, Marlys Sperger, testified certain names and addresses contained in the 1999 Registry were not "original" to AMTA. (Def. Stat. Uncon. Facts, Ex. E at 17; Pl. Res. ¶ 17). Plaintiff may have been the first to discover and report the names and addresses but this data does not "ow[e] its origin" to Plaintiff. *Feist Publ'n*, 499 U.S. at 361. Moreover, Section 103(b) of the Copyright Act explicitly states the copyright in a compilation does not extend to "the

preexisting material employed in the work." *Id.* at 361-62; 17 U.S.C. § 103(b)[7].

Therefore, the next question is whether Plaintiff selected, coordinated, or arranged these uncopyrightable facts in an original way. Originality is not a stringent standard; it does not require facts be presented in an innovative or surprising way. *Id.* at 362. However, the selection and arrangement of facts cannot be so mechanical or routine as to require no creativity whatsoever. *Id.* In fact, the "Constitution mandates some minimal degree of creativity." *Id.*

In *Feist*, the Court held the selection, coordination, and arrangement of plaintiff's white pages did not satisfy the minimum constitutional standards for copyright protection because plaintiff's white pages were "entirely typical." *Id., see also Illinois Bell Tel. Co. v. Haines and Co., Inc.*, 932 F.2d 610, 611(7th Cir. 1991) (finding subscriber listings were arranged in a form "entirely typical" and thus did not merit copyright protection, therefore, the defendant's copying of subscriber information contained in the White Pages and arranged differently than plaintiff was not copyright infringement). The *Feist* Court stated the selection of listings was insufficiently creative to make it original because the information featured (the name, town, and telephone number) was the "most basic information." 499 U.S. at 362-63. Therefore, the selection was not copyrightable expression. *Id.* at 362.

---

[7] The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material. 17 U.S.C. § 103(b).

In this case, the selection of Geographical listings includes the member name, address, telephone number, membership category, and type of therapist (registered and/or sports massage therapist). The membership categories consist of: professional, associate, school, auxiliary, and honorary; and are also broken down further into active, inactive, or retired. While the name, address, and telephone number is "entirely typical" of a directory, the listing of the membership category and type of therapist produces a sufficiently creative selection to make it original. *Id.* at 363.

Furthermore, *Feist* noted factual compilations may possess the requisite originality. Id. at 348. Choices as to which facts to include, the order of placement, and how to arrange the data so they may be used effectively by readers are sufficiently original that Congress may protect such compilations through the copyright laws so long as the choices are made independently by the compiler and entail a minimal degree of creativity. *Id.* "Even a directory that contains absolutely no protectible written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement." *Id.*

However, *Feist* placed an important limitation on this protection. *Id.* Namely, "copyright protection may extend only to those components of a work that are original to the author." *Id.* Moreover, no matter how original the format, "the facts themselves do not become original through association." *Id.* at 349. Feist stated the rule as follows:

> Facts, whether alone or as part of a compilation, are not original and therefore may not be copyrighted. A factual compilation is eligible for copyright if it

> features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement. In no event may copyright extend to the facts themselves.

*Id.* at 350-51; *see also Publ'n Int'l, Ltd.*, 88 F.3d at 480 (relying on *Feist* in ruling defendant's compilation copyright in its recipe book, "Discover Dannon," did not extend to the facts contained within the compilation).

Furthermore, in holding a yellow page directory was not infringed, the Second Circuit stated the test for infringement of a compilation is a showing of substantial similarity between only the elements that provide copyrightability to the allegedly infringed compilation. *Key Publ'n, Inc. v. Chinatown Today Publ'g Enter., Inc.*, 945 F.2d 509, 514 (2nd Cir. 1991). Here, although the selection of information for the 1999 Registry is sufficiently creative to be eligible for copyright, the copyright does not extend to the underlying facts, namely the names and addresses of therapists because "raw facts may be copied at will." *Feist Publ'n, Inc.*, 499 U.S. at 350.

Turning to the coordination or arrangement of the 1999 Registry, arrangement refers to the ordering or grouping of data into lists or categories stretching beyond mere mechanical groupings of data such as the alphabetical, chronological, or sequential listings of data. *Key Publ'n, Inc.*, 945 F.2d at 513. The *Feist* Court analyzed the coordination and arrangement of facts finding "nothing remotely creative about arranging names alphabetically in a white pages directory." *Feist Publ'n, Inc.*, 499 U.S. at 363. The Court found this time-honored tradition of arranging names alphabetically did not possess the minimal creative spark

required by the Copyright Act and the Constitution. *Id.* Thus, the Court held the names, towns, and telephone numbers copied by defendant were not original and therefore were not protected by the copyright. *Id.* The Court noted, as a statutory matter, 17 U.S.C. § 101[8] did not afford protection from copying to a collection of facts selected, coordinated, or arranged in a way utterly lacking originality. *Id.* at 363-64.

In this case, Plaintiff arranged the membership listing geographically, first by United States of America, then military location, followed by international countries. The city, military base, or island is then listed. Then the therapists are listed alphabetically for each city, etc. *Feist* held arranging names alphabetically in a white pages directory was not creative, was unoriginal, and was practically inevitable. *Id.* at 363. Similarly, the alphabetized listing of therapists first broken down geographically then by state does not possess the minimal creative spark required by the Copyright Act and the Constitution because the mere fact that Plaintiff could have arranged the 1999 Registry in some other form does not elevate the listing to the level of creative. *Id.*; *See e.g. Bellsouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.*, 999 F.2d 1436, 1442-43 (11th Cir. 1993) (finding the "relevant inquiry is not whether there is some imaginable, although manifestly less useful, method of arranging business telephone listings"). This coordination and arrangement of facts is therefore, not original. Even had the coordination and arrangement been original, the

---

[8] A "compilation" is work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works. 17 U.S.C. § 101.

underlying facts are not eligible for copyright protection. *Id.* at 350-51.

While this Court acknowledges the time and effort Plaintiff expended in creating the 1999 Registry, the "primary objective of copyright is not to reward the labor of authors, but to promote the Progress of Science and useful Arts." *Id.* at 349 (internal quotations omitted); *see also Mid America Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (finding the amount of time and effort plaintiff invested in gathering and reporting preexisting factual information for its real estate title commitment, such as the property's legal description, taxes, and mortgage, is irrelevant, "since originality, and not industry, is the touchstone of copyright protection"). *Feist* rejected the "sweat of the brow" doctrine and explained 17 U.S.C. § 102(b)[9] is universally understood to prohibit any copyright in facts. *Id.* at 352-57; *see also Key Publ'n, Inc.*, 945 F.2d at 516 (acknowledging the abandonment of the "sweat of the brow" doctrine).

Plaintiff relies on *Key Publ'n, Inc.*, 945 F.2d at 517 and *Nester's Map & Guide Corp. v. Hagstrom Map Co.*, 796 F.Supp. 729, 733-34 (E.D.N.Y. 1992) for the proposition that when a significant portion of the entire compilation is taken and used by the defendant, copyright protection may be given. Plaintiff refers to the following language in the *Key Publications* decision for support:

> If the Galore Directory had exactly duplicated a substantial designated portion

---

[9] In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work. 17 U.S.C. § 102(b).

16

of the 1989-90 Key Directory – for example, all its listings of professionals such as medical doctors, lawyers, accountants, engineers and architects, an infringement action would succeed. However, there is no claim that such duplication occurred here.

945 F.2d at 517. The *Nester* court appropriately points out, that while read in isolation, this passage may suggest the amount of copying was critical to a finding of infringement, read as a whole, the *Key Publications* court repeatedly identified the "principles guiding selection" of a copied compilation, not the amount of copying, as the critical factor. *Nester*, 796 F.Supp. at 734 *citing Key Publ'n*, 945 F.2d at 516. And under *Feist*, unless it is original, Defendant is not liable for copyright infringement. 499 U.S. 340.

This Court concludes the names and addresses copied by Defendant were not original to Plaintiff and were uncopyrightable facts, the selection of the listings were original and creative, but the coordination and arrangement of the facts were not original. However, because the Defendant only copied the facts from the 1999 Registry, the names and addresses in Plaintiff's 1999 Registry are not protected by Plaintiff's copyright.

**B.     Civil Conspiracy**

The parties agree Plaintiff's civil conspiracy claim is based on the Copyright Act violation. Therefore, because this Court finds Defendant did not infringe Plaintiff's copyright in the 1999 Registry, this Court also finds Defendant is not liable for civil conspiracy. *Thomas & Betts Corp. v. Panduit Corp.*, 108 F.Supp.2d 968, 975 (N.D.Ill. 2000) (dismissing plaintiff's civil conspiracy claim because it and the trade secret misappropriation claims were redundant, thus the civil conspiracy claim was abolished).

## IV. CONCLUSION

This case raises no fact questions for a jury to decide. Defendant did not infringe on Plaintiff's copyright of the 1999 Registry because Defendant only copied uncopyrightable facts. Similarly, Defendant is not liable for civil conspiracy. **Therefore, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted as to Counts III and VI of Plaintiff's Complaint.**

**SO ORDERED THIS 18th DAY OF JULY, 2002.**

_____
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to:**

| | |
|---|---|
| Gene H. Hansen | Timothy J. Rivelli |
| Bullwinkel Partners, Ltd. | Julie A. Bauer |
| 19 S. LaSalle Street | Kareem A. Dale |
| Suite 1300 | Winston & Strawn |
| Chicago, Illinois 60603 | 35 West Wacker Drive |
| (312) 201-0777 | Chicago, Illinois 60601 |
| | (312) 558-5600 |
| **Attorney for Plaintiff** | **Attorneys for Defendant** |